Nicholas J. Kittleson
9058 Dewberry Street
Anchorage, Alaska  99502
(907) 345-0830 phone
(907) 243-0125 fax
Attorney for the Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JANET D. LEWIS,<br><br>   Plaintiff,<br>vs.<br><br>MICHAEL W. WYNNE, Acting Secretary of the United States Air Force; LEE TOMLINSON, SUSAN FALLON, AL BARTZ, COL. GARY DZUBILO, LT. COL. DAVID AUPPERLE, TONY KOBUSSEN, DIANNE HARRISON, COL. ROBERT DOUGLAS, KATHY DESHASIER, COL. SCOTTY LEWIS, CHELLEY CORREA, SUSAN SPEROFF, TRINA PAULEY, and MARY BARKLEY,<br><br>   Defendants. | Case No.: 3:06-cv-53 |

OPPOSITION TO MOTION TO DISMISS

  Janet Lewis hereby opposes the defendants' motion to obtain dismissal each of the individually named defendants as well as the dismissal of her state tort claims and §1981 claims.  The basis of Ms. Lewis' opposition is that the labeling of her claims as Federal Tort Claims Act ("FTCA") claims is premature at this point as the defendants have not complied with the Westfall Act.   Additionally, while the 9th Circuit may not allow

plaintiff to proceed against individuals in Title VII claims, there exists division in the circuits with respect to this issue and Ms. Lewis' case may be the ideal suit to allow the 9th Circuit to reexamine its holding in <u>Miller v. Maxwell's International</u> regarding standing to bring suit against individual employees under Title VII.

From the outset, Ms. Lewis wishes to point out that although the defendants do not appear to be disputing the facts, the rendition of the facts set forth in pages 2 – 4 constitutes a gross minimization of the events that transpired in the case. The "facts" as presented by the defendants in the motion are not only unhelpful, but they are misleading and unsupported by the defendants, who have yet to plead. The only proper set of facts to review when considering the motion is the factual allegations contained in Ms. Lewis' first amended complaint.[1] Additionally, the statement regarding the issues before the EEOC is incomplete and unnecessary given the nature of the motion.

It is also important to note that there is no dispute that this court has jurisdiction to hear and resolve Ms. Lewis' Title VII claims against the Air Force. The motion seeks only to dismiss the §1981 claim and the state tort claims, and to dismiss the individual defendants from the Title VII claims.

I. The Motion to Dismiss The Individual State Tort Claims Is Premature.

The individual defendants are requesting to be dismissed from the case. Ms. Lewis brought state tort claims against these individuals in counts seven through eleven.

---

[1] The Declaration of Col. Gregory Girard may be considered. However, the fact that no FTCA claim has been made is not disputed. Ms. Lewis will file her FTCA claims if the Air Force certifies pursuant to the Westfall Act. See argument in section I.

This court has jurisdiction for the state tort claims under 28 U.S.C. §1367. Ms. Lewis claims this in her jurisdictional statement, paragraph 2 of her amended complaint. Pendent jurisdiction saves the court system resources in terms of litigating all claims arising out of a common set of occurrences.

The landscape of state tort claims against federal employees changed dramatically following the decision <u>Westfall v. Erwin</u>, 484 U.S. 292, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988). In response to this decision, Congress passed the Federal Employees Liability Reform and Tort Compensation Act aka "the Westfall Act", PL 100-694, November 18, 1988. 28 U.S.C. 2679(d) was amended to require the Attorney General to certify that a defendant employee was acting within the scope of his/her office or employment at the time of the incident. 28 U.S.C. 2679(d)(1) & (2). If the Attorney General refuses to certify, then the employees themselves have the right to petition the court for certification. 28 U.S.C. 2679(d)(3).

The Air Force could decide to take full responsibility and certify the employees' actions under the Westfall Act. On the other hand, the Air Force could decide that they are not going to certify the actions and require the individual defendants to defend themselves. If the Attorney General certifies the employees, then under the Westfall Act's amendments, the claims convert to FTCA claims and it will be proper for this Court to dismiss the state tort claims, and Ms. Lewis would be required to file her FTCA claims within 60 days of dismissal. 28 U.S.C. 2679(d)(5). If the claims are not resolved through the administrative agency, then Ms. Lewis would have the right to pursue the claims in federal court. This court may determine that it would be the best use of judicial resources

to stay the current case if the Attorney General certifies the individual defendants until the Air Force has had an opportunity to administratively resolve the claims.

If there is no certification, the claims remain just as they are and Ms. Lewis proceeds against the individual defendants as state tort claims through this court's pendent jurisdiction.

II. The Court Should Retain Jurisdiction Over Individual Employees Pursuant to the Title VII Claims.

Title VII is clear that not just the employer may be found liable, but also its agents. "The term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person, . . ." 42 U.S.C. 2000e(b).  "[T]here is general agreement among the circuits which have addressed the issue that an "agent" of an "employer" is subject to individual liability under Title VII."  Lamirande v. Resolution Trust Corporation, 834 F.Supp. 526, 528 (D. N.H. 1993).

The Defendants correctly state that the 9th Circuit has determined in Miller v. Maxwell's International and Padway v. Palches that civil liability is limited to the offending organization.  In Miller, the 9th Circuit defended its reasoning against the growing tide of oppositional cases by pointing to language in the statute limiting claims based on the size of the institution, and assuming that the purpose was to protect those entities and individuals with "limited resources."  Looking globally at the purpose of

Title VII, the logical extension of the decision would then be that Congress only intended to stop discrimination in large, wealthy institutions.

Holding individual agents of the employer liable for the discrimination they participated allows this court to fashion the best remedies to prevent future discrimination. In footnote 3 in the Strzelecki v. Schwartz Paper Company International decision, the court critiques the Miller v. Maxwell's International analysis in terms of the ADEA. "The ADEA is designed not only to compensate victims of discrimination but to deter potential discriminators, and the latter goal is undermined when people who make discriminatory decisions do not have to pay for them." Strzelecki v. Schwartz Paper Company International, 824 F.Supp. 821, 829 fn. 3 (N.D. Ill. 1993). These decisions point out a lack of any real remedial power of anti-discrimination legislation if the perpetrators have immunity from liability.

Miller v. Maxwell's International hypothesizes that if an enterprise "incurred civil damages because one of its employees believes he can violate Title VII with impunity will quickly correct that employee's belief." Miller at 588. This argument assumes that an employer will have an economic incentive to prevent discrimination from occurring. The case before us is one where there is no such incentive. The United States Air Force is not in competition with any other Air Force for money. The money this or any other case costs is felt only by the citizens of the United States (either through higher taxes now, increased borrowing (higher taxes later), or reduction in other government services). So neither the Air Force, nor any of its employees, have anything to worry about in terms of detriment from a Title VII suit. Only if the individuals themselves are held personally

accountable will there be any incentive to stop discriminatory behavior. If the 9th Circuit decides to reverse its position on the issue, the Air Force, and indeed society as a whole, would reap significant benefits. The courts would have the power to fashion remedies to actually end the discrimination. For example, when the court exercises its equitable powers in ordering an organization to provide racial sensitivity training to the employees, under Miller, the court would not have authority to require the individual employees to actually attend the training. Orders requiring employees who discriminate to attend and complete racial sensitivity training attacks the problem at its source. Individual responsibility and accountability are key to eradicating discrimination.

Lamirande v. Resolution Trust Corporation was also directly critical of the conclusions drawn in Miller. The Lamirande court pointed out that the Miller court had no authority for its conclusion, and noted remarks made while the bill was being debated regarding insulating small businesses from liability for the general propensity of hiring friends and family. Lamirande v. Resolution Trust Corporation, 834 F.Supp. 526, 528 (D. N.H. 1993) Lamirande urged a liberal interpretation of Title VII to end discrimination:

> The primary purpose of the Civil Rights Act, and Title VII in particular, is remedial. Its aim is to eliminate employment discrimination by creating a federal cause of action to promote and effectuate its goals. To effectuate its purpose of eradicating the evils of employment discrimination, Title VII should be given a liberal construction. The impact of this construction is the broad interpretation given to the employer and employee provisions.
>  *Armbruster, supra,* 711 F.2d at 1336 (citations omitted).
> If there was any doubt as to the Congressional intention that the original language of Title VII be construed and applied

Lewis v. U.S.A.F.  3:06-cv-53    OPPOSITION TO MOTION TO DISMISS - 6

> broadly, it was dissipated by the unequivocal intention expressed in the passing of the 1972 amendments to that title.

Lamirande v. Resolution Trust Corporation, 528-29.

The court in Boyd v. O'Neill most recently pointed out the critical flaw in the Miller v. Maxwell's International analysis: Brown did not allege a state tort claim.

> *Brown*, however, does not preclude a federal employee from ***96** bringing common law claims of intentional infliction of emotional distress and assault against her supervisor based on conduct that also happens to be discriminatory. As persuasively decided by Judge Norma Holloway Johnson of this court, *Brown* is inapplicable to common law tort claims against a federal employee in his individual capacity because *Brown* 's discussion of the exclusivity of remedies for federal employees is limited to the exclusivity of *federal* remedies for employment discrimination. A review of the nature of the plaintiff's allegations in *Brown* demonstrates that the plaintiff did not attempt to redress his discrimination claims through a state tort claim for damages directed at federal officials in their individual capacities.
> *Epps v. Ripley,* No. 81-588, 1982 WL 514, at *1 (D.D.C. Mar. 11, 1982)  (emphasis in original).

Boyd v. O'Neill, 273 F.Supp.2d 92, 95-96 (D.D.C. 2003).

III. Title VII Does Not Preclude Claims Against The Individual Employees.

A number of cases have concluded that the decision in Brown v. General Services Administration only precludes other actions against the federal government, but does not prevent a plaintiff from maintaining actions against individual government employees.

> *Brown* did not address the question of Title VII's preemptive effect on discrimination suits brought against individual officers for damages.... *Brown* was decided on the basis of the sovereign immunity doctrine, a doctrine that curtails the ability of claimants to obtain official relief *against the federal government,* including relief taking the form of retroactive promotion and back pay.... Sovereign immunity

> serves to protect the federal government from unconsented suits that go to invading the public treasury and mandating governmental action.... But the doctrine does not extend to protect government officers from personal liabilities arising out of their official activities.... Taking the Federal Tort Claims Act as a model, it emerges that waivers of sovereign immunity do not in and of themselves affect preexisting remedies available against individual officials.... Since nothing in Title VII reveals an intent to disturb avenues of relief against discriminating officials in their personal capacities, *Brown's* preemption rule stands circumscribed to the extent of cutting off only official remedies for federal employment discrimination.

Wood v. U.S. 760, F.Supp. 952, 956 (D. Mass. 1991) (*affirmed* 995 F.2d 1122 (1st Cir. 1993)) (*quoting* Neely v. Blumenthal, 458 F.Supp. 945, 952-955 (D.D.C. 1978). The decision in Epps v. Ripley also discusses multiple reasons why a Title VII action does not bar state tort claims against individuals.

> *Brown* established that Title VII was the exclusive judicial remedy for claims of employment discrimination brought against federal employees in their official capacities. *Id.* at 835. Plaintiff, however, has brought a common-law tort against defendant Underwood in his individual capacity. Consequently, there are three reasons why *Brown* does not control the instant case. First, *Brown's* discussion of the exclusivity of remedies for federal employees is limited to the exclusivity of *federal* remedies for employment discrimination. A review of the nature of the plaintiff's allegations in *Brown* demonstrates that the plaintiff did not attempt to redress his discrimination claims through a state tort claim for damages directed at federal officials in their individual capacities. *See Brown v. GSA*, [8 EPD P 9802] 507 F.2d 1300, 1303 (2d Cir. 1974). While federal courts have been willing to rely on the *Brown* Court's reasoning to bar constitutional damage actions when Title VII remedies are available, *see, e.g., Neely v. Blumenthal,* 458 F. Supp. 945 (D.D.C. 1978), plaintiffs have cited no authority for the proposition that *Brown* preempts state tort remedies. Second, a federal court determining whether to imply a constitutional

> damage action engages in a significantly different process than a federal court passing on an already existent state tort remedy. To have a constitutional damage action implied, a plaintiff must make a satisfactory showing that the guidelines established in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388 (1971), have been met.  In contrast, defendants in the instant case must demonstrate that the *Brown* reasoning forecloses a state tort remedy that otherwise would be available. Although a court may be persuaded by the *Brown* reasoning that it would not be prudent to imply a constitutional damage action, [FN*] this Court finds no support in *Brown* for precluding state tort remedies. Third, reading *Brown* to have no effect on the availability of state tort remedies is supported by the deference Title VII accords state laws barring employment discrimination. *See* Title VII of the Civil Rights Act of 1964, 42 U.S.C. §  2000e-7 (1976).    *Cf. Colorado Anti-Discrimination Comm'n v. Continental Airlines, Inc.,* [1 EPD P 9681] 372 U.S. 714 (1963) (federal interpretation of employment discrimination law does not control state law; states are free to provide greater protection).

Epps v. Ripley, 1982 WL 514 (D.D.C.).

The defendants state that plaintiffs can name "only" the secretary of the appropriate department. Motion at 6. The defendants cite Gonzalez in support of this proposition. However, Gonzalez does not limit who can be sued. It does not even discuss the issue. Title VII waives sovereign immunity and designates the name of its representative as the named party. But this does not limit who can be sued under Title VII.

Additionally, the individual defendants have no authority supporting the proposition that they may not be held liable under 42 U.S.C. §1981. The defendants attempt to claim that footnote 8 of the decision in Brown v. GSA precludes liability for them. However, footnote 8 specifically relies upon sovereign immunity. The individual

defendants have no claim to sovereign immunity.  Individuals can be held liable for violations of §1981.  <u>Jones v. Continental Corp.</u>, 789 F.2d 1225, 1231 (6th Cir. 1986).  Title VII does not preclude §1981 claims.  <u>Johnson v. Railway Exp. Agency, Inc.</u>, 421 U.S. 454, 95 S.Ct. 1716, 1719-1720 (1975).

IV. The Remedies Available Must Address and Remediate The Harms Suffered.

Ms. Lewis has suffered two distinct violations of her rights, akin to the plaintiff in <u>Stewart v. Thomas</u>;  "[H]er right to be free from discriminatory treatment at her jobsite and her right to be free from bodily or emotional injury caused by another person."  <u>Stewart v. Thomas</u>, 538 F.Supp. 891, 895 (D.D.C. 1982).  Like the <u>Stewart v. Thomas</u> plaintiff, Ms. Lewis, "seeks additional relief under common law tort theory to compensate for harms above and beyond discrimination which Title VII does not seek to remedy."  <u>Stewart</u> at 896.

Ms. Lewis had pled facts showing that she has sustained harm to such an extent that she has had to seek medical and psychological assistance.  See First Amended Complaint at paragraphs 75, 89, 90, 137, 143, 150.[2]   "when, as here, the victim of a discriminatory act alleges a harm apart from discrimination, Title VII does not preclude her from suing under a common law tort theory to remedy that distinct injury." <u>Boyd v. O'Neill</u>, 273 F.Supp.2d 92, 96 (D.D.C. 2003).  The government would have to grant that Ms. Lewis' medical bills would be fully paid under Title VII's compensatory damages.

---

2 The complaint does not contain all instances where Ms. Lewis had to seek medical treatment for physical and mental harms that resulted from how she was treated by the defendants.

## Conclusion

While Title VII may be the exclusive remedy vis-à-vis the federal government for redress of the discrimination Ms. Lewis suffered, she has pled state tort claims that cannot be dismissed until the Attorney General certifies that the employees where acting within the scope of their employment.  Since the Attorney General has not certified the claims, Ms. Lewis is entitled to continue her pursuit of those claims under this Court's pendent jurisdiction.

As there is significant dispute regarding individual liability under Title VII, even though the 9th Circuit has made a determination upon this issue, Ms. Lewis wishes to preserve the issue for review upon appeal, and give the appellate court the opportunity to revisit the issue.

Finally, there is no bar to pursuing §1981 claims against the individual defendants.

Respectfully submitted this 11th day of July, 2006.

/s/ Nicholas Kittleson
Nicholas Kittleson, Esq.
ABA # 9711090
Counsel for the plaintiff
9058 Dewberry Street
Anchorage, Alaska  99502
(907) 345-0830 phone
(907) 243-0125 fax
nicholas@gci.net email

I certify that on the 11th day of July, 2006
A copy of the foregoing "Opposition to Motion to Dismiss" was delivered electronically to:
Susan J. Lindquist, Esq.
susan.lindquist@usdoj.gov

/s/ Nicholas J. Kittleson

Lewis v. U.S.A.F.  3:06-cv-53    OPPOSITION TO MOTION TO DISMISS - 11