# UNITED STATES DISTRICT COURT

# DISTRICT OF ALASKA

| | |
|---|---|
| JANET D. LEWIS, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> MICHAEL B. DONLEY, Acting ) <br> Secretary of the United States Air ) <br> Force, ) <br> ) <br> Defendant. ) <br> ) | 3:06-cv-0053 JWS <br><br> ORDER AND OPINION <br><br> [Re:  Motion at Docket 326] |

## I.  MOTION PRESENTED

At docket 326, plaintiff Janet D. Lewis moves for equitable remedies pursuant to Federal Rule of Civil Procedure 7(b) and the court's post-verdict request for briefing.  At docket 332, defendant Michael B. Donley, Acting Secretary of the United States Air Force, opposes the motion.  Plaintiff replies at docket 336.  Oral argument was not requested and would not assist the court.

## II.  BACKGROUND

The background facts for this action are well known to the parties and are set forth in the court's orders at dockets 202 and 210.  A summary of the case's relevant procedural history follows.  On March 8, 2006, plaintiff Janet Lewis filed a complaint against defendant Michael Donley, Acting Secretary of the United States Air Force, and the United States of America (jointly "Donley").  On July 9, 2008, plaintiff Lewis filed her

third amended complaint against Donley, alleging ten claims, including claims of disparate treatment and impact in hiring and promotion pursuant to 42 U.S.C. §2000e-2(a)(1), retaliation pursuant to 42 U.S.C. §2000e-3(a), unlawful removal from employment under 5 U.S.C. § 7702, negligent and intentional infliction of emotional distress, negligent supervision, and punitive damages.

After almost five years of motion practice, a jury trial commenced on February 7, 2011, on plaintiff's Title VII claims of race discrimination and retaliation for filing an EEO complaint. On February 18, 2011, the last day of trial, the court heard counsels' formal exceptions to the jury instructions and special verdict form. Plaintiff's counsel took exception to the exclusion of plaintiff's proposed jury instructions on "Qualifications" and "Subjective Decision Making In Employment Cases," and to Jury Instruction No. 6 on "Retaliation." As to the "Retaliation" instruction, plaintiff's counsel stated, "I finally take an exception on the retaliation instruction that we are not including that actions taken as a whole constitute retaliation against Ms. Lewis for her EEO activity." The court concluded that inclusion of plaintiff's proposed language concerning actions taken as a whole was unnecessary to accurately state the law and instruct the jury. As given, the jury instruction for "Retaliation" stated:

> Lewis claims that Donley retaliated against her. To succeed on her claim of retaliation, Lewis has the burden of proving each of the following elements by a preponderance of the evidence:
>
> 1. Lewis engaged in or was engaging in an activity protected under federal law, specifically pursuing claims before the Equal Employment Office of the Air Force, which I will refer to as the EEO;
> 2. Donley subjected Lewis to an adverse employment action; and
> 3. Lewis was subjected to the adverse employment action because she made or pursued claims before the EEO.
>
> If you find Lewis has proved all three of these elements, your verdict should be for Lewis. If, on the other hand, you find Lewis has failed to prove any of these elements, your verdict should be for Donley. The parties agree that the first element has been proved, so you should concentrate on the second and third elements.
>
> Lewis contends that the following actions were adverse employment actions taken in retaliation for her having made an EEO claim:

      1. Reducing the scores on Ms. Lewis' mid-term and annual appraisals;
      2. Taking disciplinary action against Ms. Lewis;
      3. By assigning extra work to Ms. Lewis;
      4. Improperly handling Ms. Lewis' Form 332 work orders;
      5. Denying some of Ms. Lewis' leave requests;
      6. Criticizing Ms. Lewis' spending decisions;
      7. Treating plaintiff Lewis improperly during the 2006 accreditation process by doing one or more of the following:
          (a) Changing her work schedule;
          (b) Requiring plaintiff Lewis to use different hiring procedures than the other CDC directors;
          (c) Causing turmoil at the Katmai Center; and
          (d) Obtaining statements from Ms. Noceda and Ms. Norman.
      8. Denying Ms. Lewis' request for Family Medical Leave; and
      9. Terminating Ms. Lewis' employment.

As used in this instruction, an adverse employment action is an action which a reasonable worker would consider materially adverse and which could persuade a reasonable worker not to make or pursue a claim of racial discrimination.

Whether any of the claims before the EEO had merit is irrelevant to your determination of whether Donley retaliated against Lewis for making or pursuing EEO claims. You may consider a close proximity in time between Lewis' actions regarding the EEO claims and an adverse employment action as circumstantial evidence that the adverse employment action was taken because Lewis made or pursued the EEO claims.[1]

On February 18, 2011, the court instructed the jury prior to closing arguments. When the jury adjourned to deliberate, the court submitted to the jury copies of the jury instructions and a form labeled "Special Verdict," which consisted of 11 questions.[2] Questions (1), (3), and (5) asked the jury:

    (1) Did defendant Donley discriminate against plaintiff Lewis on the basis of her race when he selected Mary Barkley to be the director of the Sitka Center?
    ...

    (3) Did defendant Donley discriminate against plaintiff Lewis on the basis of her race when he terminated her Air Force employment?
    ...

---

[1] Doc. 324 at pp. 7-8.

[2] Doc. 325.

(5) Did defendant Donley retaliate against plaintiff Lewis by taking one or more adverse employment actions?

If the jury answered yes to any of questions (1), (3), and (5), it was instructed to answer the following questions:

(7) If you answered "Yes" to any of questions (1), (3), and (5), insert the total amount of money which will reasonably and fairly compensate plaintiff Lewis for the reasonable value of medical care, treatment, and services.

(8) If you answered "Yes" to any of questions (1), (3), and (5), insert the total amount of money which will reasonably and fairly compensate plaintiff Lewis for mental, physical, and emotional pain and suffering.

In addition, the special verdict requested the jury to answer the following questions, "because the court would like to consider your responses when it determines if any other damages should be awarded to Lewis":

(A) After Lewis filed her EEO claim, did Defendant retaliate against her by failing to award her any cash or time-off bonus in any annual appraisal?

(B) If you answered "Yes" to question (A), state how many times such retaliation occurred ...

(C) After Lewis filed her EEO claim, did Defendant retaliate against her by suspending her from work without pay for 14 days beginning on or about August 31, 2005?

The jury returned the Special Verdict, finding that: Donley did not discriminate against Lewis when he selected Mary Barkley to be the director of the Sitka Center, Donley did not discriminate against Lewis on the basis of her race when he terminated her Air Force employment; and, Donley retaliated against Lewis by taking one or more adverse employment actions. The jury also found that Donley did not retaliate against Lewis by failing to award her any cash or time-off bonus in any annual appraisal, or by suspending her from work without pay for 14 days beginning August 31, 2005. As compensatory damages for Ms. Lewis's retaliation claim, the jury awarded Lewis $60,000 for the reasonable value of medical care, treatment, and services, and $40,000 for mental, physical, and emotional pain and suffering. After the jury returned its verdict,

plaintiff requested the court to award equitable relief for her retaliation claim. The court ordered plaintiff to file a motion for equitable relief and defendant to file a response.

### III. APPLICABLE LEGAL STANDARD

Federal Rule of Civil Procedure 49(a) applies to "special verdicts."[3] "A special verdict consists of a list of interrogatories that calls for findings of fact."[4] "In theory, special verdicts compel the jury to focus exclusively on its fact-finding role. Special verdicts also empower the judge to play a more prominent role by applying the law to the jury's findings of facts."[5] Under Federal Rule of Civil Procedure 49(a), "[t]he trial court has complete discretion whether a general or special verdict is to be returned, and this discretion extends to determining the form of the special verdict, provided the questions asked are adequate to obtain a jury determination of the factual issues essential to judgment."[6] Pursuant to Rule 49(a)(3),

> A party waives the right to a jury trial on any issue of fact raised by the pleadings or evidence but not submitted to the jury unless, before the jury retires, the party demands its submission to the jury. If the party does not demand submission, the court may make a finding on the issue. If the court makes no finding, it is considered to have made a finding consistent with its judgment on the special verdict.

### IV. DISCUSSION

Ms. Lewis moves for an award of equitable relief pursuant to 42 U.S.C. § 2000e-5(g), including back pay with prejudgement interest and reinstatement or front pay. In a claim based on Title VII, if the court finds that the defendant has intentionally engaged in an unlawful employment practice charged in the complaint, "the court may enjoin the respondent from engaging in such unlawful employment practice and order such affirmative action as may be appropriate, which may include but is not limited to, reinstatement or hiring of employees, with or without back pay [], or any other equitable

---

[3] *Floyd v. Laws*, 929 F.2d 1390, 1395 (9th Cir. 1991).

[4] *Floyd v. Laws*, 929 F.2d 1390, 1395 (9th Cir. 1991).

[5] *Id.*

[6] *Mateyko v. Felix*, 924 F.2d 824, 827 (9th Cir. 1990).

-5-

relief as the court deems appropriate."[7]  Under Title VII, "unlawful employment practices" include discrimination against an employee "because [she] has opposed any practice made an unlawful employment practice by this subchapter, or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."[8]

Ms. Lewis specifically requests the following equitable relief: 1) reinstatement or an award of front pay; 2) back pay and reinstatement of benefits; 3) removal of employees involved in the retaliation; 4) expungement of her disciplinary records and appraisals; 5) bonuses and time off awards commensurate with other similarly situated employees; 6) back pay for a two-week suspension without pay in August 2005; 7) an injunction enjoining defendant's employees from engaging in further retaliatory conduct; 8) an award of interest on any award of back pay; 9) notification to all Elmendorf Air Force Base employees of the outcome of this case; and 10) an award of attorney's fees and costs.  The court considers each category of relief in turn.

**Back Pay and Reinstatement of Benefits**

Ms. Lewis requests an award of back pay and reinstatement of benefits to November 16, 2006, "in the amount that she would have earned had she not been retaliated against to the point of needing Dr. Hendelman's order for 120 days off which led to her subsequent and retaliatory termination."[9]  The government opposes her request on the grounds that the jury did not find that Ms. Lewis was terminated in retaliation for her protected activity.

As set forth in Jury Instruction No. 6, to succeed on her retaliation claim, Ms. Lewis had the burden of proving each of the following elements by a preponderance of the evidence:

---

[7] 42 U.S.C. § 2000e-5(g)(1).

[8] 42 U.S.C. § 2000e-3(a).

[9] Doc. 326 at p. 10.

> 1. Lewis engaged in or was engaging in an activity protected under federal law, specifically pursuing claims before the Equal Employment Office of the Air Force, which I will refer to as the EEO;
> 2. Donley subjected Lewis to an adverse employment action; and
> 3. Lewis was subjected to the adverse employment action because she made or pursued claims before the EEO.

The jury instruction further stated that "an adverse employment action is an action which a reasonable worker would consider materially adverse and which could persuade a reasonable worker not to make or pursue a claim of racial discrimination," and identified nine actions which Ms. Lewis contended were adverse employment actions taken in retaliation for her having made an EEO claim. The jury instruction did not require the jury to identify or agree on a particular adverse employment action.

Similarly, the Special Verdict did not ask the jury to identify the specific adverse employment action(s) Donley took against Lewis, asking instead, "Did defendant Donley retaliate against plaintiff Lewis by taking one or more adverse employment actions?"[10] Although it is clear from the jury's verdict that the jury unanimously found that Donley took one or more adverse employment actions against Lewis in retaliation for her protected activity, it is not clear which adverse employment action(s) the jury concluded that Donley took.

The issue of whether the jury should have been instructed to identify one or more adverse employment actions is precluded by Lewis's failure to object on these grounds to the "Retaliation" instruction or Special Verdict form. Plaintiff's counsel objected to the jury instruction on "Retaliation" to the extent that it did not state that "actions taken as a whole constitute retaliation against Ms. Lewis for her EEO activity," but not to the extent that it did not require the jury to identify or agree on which adverse employment actions were taken by Donley. Moreover, plaintiff's counsel did not object to the questions asked on the Special Verdict form. Because Ms. Lewis did not demand submission of the above issue to the jury, the court may make a finding on the issue.[11]

---

[10]Doc. 325 at p. 2.

[11]Fed. R. Civ. P. 49(a)(3).

In the Ninth Circuit, "retaliation claims have arisen most often in the context of an employee's termination, and the causation element in those cases requires the plaintiff to show 'by a preponderance of the evidence that engaging in the protected activity was one of the reasons for the firing and but for such activity the plaintiff would not have been fired.'"[12] Based on the evidence before the court, the court finds that Ms. Lewis has failed to show by a preponderance of the evidence that but for her EEO complaint, her employment would not have been terminated. The government presented evidence showing that Ms. Lewis's employment was terminated because she took leave without her employer's approval, and that her leave request was denied because of insufficient medical certification. Ms. Donley has not shown that the government's proffered reason was pretext. Because Ms. Donley failed to persuade the court by a preponderance of the evidence that she was terminated in retaliation for filing an EEO complaint, she is not entitled to an award of back pay and benefits, or to an award of interest on any back pay award.

Ms. Lewis argues that "[t]he jury's verdict clearly indicates that the termination event, which caused Ms. Lewis to suffer a heart attack, was retaliation. Otherwise they would not have awarded her medical expenses for the emergency operation and recovery expenses for the heart attack."[13] The government contends that "[t]he court will never know how the jury calculated $60,000, and therefore, the court would be speculating to use that award as a basis for its decision to provide equitable remedies."[14] The court concurs and declines to award back pay on a conjectural basis.

**Reinstatement or Front Pay**

Ms. Lewis next requests that she be reinstated in the United States Air Force effective to March 12, 2007, or that she be awarded front pay in an amount equal to the pay and benefits she would have received had she continued her employment with the

---

[12]*Ruggles v. California Polytechnic State University*, 797 F.2d 782, 785 (9th Cir. 1986) (quoting *Kauffman v. Sidereal Corp.*, 695 F.2d 343, 345 (9th Cir. 1982)).

[13]Doc. 326 at p. 6.

[14]Doc. 332 at p. 5.

-8-

Air Force. "[F]ront pay is simply money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement."[15] "To receive front pay, a Title VII plaintiff must show that her employer's violations of Title VII caused her loss of employment."[16] Because plaintiff Lewis has not proven by a preponderance of the evidence that Donley's violations of Title VII, namely retaliation, caused the termination of her employment, she is not entitled to reinstatement or front pay.

**Removal of Employees Involved in Retaliation**

Ms. Lewis next argues that "Kathie DeShasier, Dianne Harrison, Col. Michael Borgert, Mary Barkley, Trina Pauley, Chelley Correa, and Susan Speroff should be terminated from Air Force employment for their role in encouraging, counseling and carrying out retaliatory behavior against Ms. Lewis" and "Col. David Aupperle, Tony Kobussen and Col. Scotty Lewis should be removed for failing in their responsibility to protect Ms. Lewis from the discriminatory retaliation."[17] Ms. Lewis cites 42 U.S.C. § 2000e-16(e) as authority for the termination of the above employees. However, § 2000e-16 does not provide the court with authority to terminate individual employees who engage in retaliatory conduct. Moreover, as discussed above, the jury did not identify which adverse employment actions supported its retaliation finding. Consequently, it is not clear which employee engaged in the retaliatory conduct.

**Expungement of Disciplinary Record and Appraisals**

Ms. Lewis also asks that all "negative records (i.e., form 971 annotations), reprimands, suspensions, and record of termination be removed from her employment file" and that her appraisals be revised to reflect her pre-EEO complaint scores. Even assuming the court had authority to revise Ms. Lewis's performance appraisals, the court declines to do so because it has no way of knowing how Ms. Lewis would have performed had she not filed her EEO complaint. As to the remainder of Ms. Lewis's records, the government indicates that any letters of reprimand, form 971 write ups,

---

[15] *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846 (2001).

[16] *Gotthardt v. National R.R. Passenger Corp.*, 191 F.3d 1148, 1155 (9th Cir. 1999).

[17] Doc. 326 at pp. 11-12.

-9-

appraisals, and suspension records will be destroyed as a matter of law at the conclusion of this litigation. The government contends that the Notice of Personnel Action-Form 50-B is a life-time permanent record and would need a court order to be expunged. Because Ms. Lewis does not cite any authority for the court's expungement of a Notice of Personnel Action - Form 50-B, the court declines to order its expungement. However, it appears that Ms. Lewis may request amendment of a record pertaining to her under 5 U.S.C. § 552a(d)(2).

**Bonus and Time Off Awards**

Ms. Lewis further requests bonuses and time off awards commensurate with other employees who directed child development centers at Elmendorf Air Force Base. Because the jury specifically found that Donley did not retaliate against Lewis by failing to award her any cash or time-off bonus in any annual appraisal, Ms. Lewis is not entitled to an award of back bonuses or time-off awards.

**Back Pay for Suspension without Pay**

Ms. Lewis next requests compensation for the two weeks she was suspended without pay in August 2005. Because the jury found that Donley did not retaliate against Lewis by suspending her without pay for 14 days beginning August 31, 2005, she is not entitled to an award of pack pay for her 14-day suspension.

**Injunctive Relief**

Ms. Lewis also requests an injunction "enjoining the defendants' employees from further retaliatory conduct against her or any of the employees that provided testimony, assistance or otherwise participated or supported in any manner Ms. Lewis in her claims."[18] Injunctive relief as to Ms. Lewis is now moot, because she is no longer employed by the Air Force and defendants' employees can no longer engage in additional retaliatory conduct against her. Ms. Lewis has failed to provide any evidence showing that defendants have retaliated against employees who participated in or supported her claims, or that an injunction is necessary to prevent further harm. Accordingly, the court declines to issue an injunction.

---

[18]Doc. 326 at p. 13.

-10-

Case 3:06-cv-00053-JWS   Document 337   Filed 04/08/11   Page 10 of 11

**Notification**

Ms. Lewis does not cite any applicable authority providing notification to all Air Forced employees at Elmendorf about the outcome of this case or for reassurance that Air Force employees will not engage in future retaliatory conduct for protected activity. The outcome of this case is a matter of public record, and the court declines to issue any further notification or reassurance to current Air Force employees.

**Attorney's Fees and Costs**

Finally, Ms. Lewis requests an award of attorney's fees and costs pursuant to 42 U.S.C. § 2000e-5(k). Because the parties have not briefed the issue of attorney's fees and costs, the court declines to address the issue herein and will address the issue in the course of ordinary motion practice pursuant to Federal Rule of Civil Procedure 54(d).

## V.  CONCLUSION

For the reasons set out above, plaintiff's motion for equitable remedies at docket 326 is **DENIED**. Plaintiff may file a separate motion for attorney's fees and costs pursuant to 42 U.S.C. § 2000e-5(k) and Fed. R. Civ. P. 54(d).

DATED at Anchorage, Alaska, this 8th day of April 2011.

/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE